OPINION OF THE COURT
Rosalyn Richter, J.
In this proceeding, this court must decide whether it has the authority to review a determination made by the New York State Board of Examiners of Sex Offenders (the Board) requiring David Nadel (respondent), who was convicted of a Federal sex offense, to register in New York State as a sex offender. For the reasons discussed herein, the court concludes that it has the power to review whether the Board’s determination is legally correct. Upon reviewing the Board’s decision, the court finds that the Board erred when it determined that respondent’s Federal conviction requires him to register as a sex offender in New York.
On June 23, 1998, respondent pleaded guilty in the Southern District of New York to an information charging one count of computer transmission of material involving sexual exploitation of minors (18 USC'§ 2252 [a] [l]).[1] That charge arose from allegations that respondent had transmitted via the Internet three photographs of juveniles engaged in sexually explicit conduct. Respondent was sentenced to home detention for a period of 15 months and five years’ probation, and was directed to undergo mental health treatment during the entire term of his probation.
On May 17, 2000, the Board informed respondent that since he had been convicted of a sex offense in another jurisdiction and resides in New York State, he may be required to register *429 as a sex offender under the provisions of the Sex Offender Registration Act (Correction Law art 6-C [SORA]). The letter invited respondent to submit any materials that he wished the Board to consider in making their determination.
In a letter to the Board dated June 6, 2000, respondent’s counsel argued that respondent should not be required to register as a sex offender because the Federal crime of which respondent was convicted does not contain all of the essential elements of any New York State sex offense. Specifically, respondent contended that whereas the Federal crime requires that a defendant transmit sexually explicit images of an individual under the age of 18, the analogous State statutes criminalizing such conduct apply only where the images are of children less than 16 years old. Thus, respondent argued, under the strict statutory construction rules developed by the Court of Appeals for using out-of-State convictions to adjudicate defendants as prior felony offenders, respondent’s Federal conviction does not qualify as a sex offense under SORA’s definition of that term.
On August 15, 2000, the Board informed respondent and the clerk of this court that it had determined that respondent would be required to register because the Federal statute to which respondent pleaded guilty contains the essential elements of two New York crimes: promoting a sexual performance by a child (Penal Law § 263.15) and promoting an obscene sexual performance by a child (Penal Law § 263.10). The Board’s submission to this court included a case summary which indicated that the Board’s conclusion that respondent must register was based upon a review of the respondent’s file, including a presentence investigation conducted by the Southern District’s Probation Office. The case summary states that the three photographs respondent had transmitted over the Internet contained images of children under the age of 12.[2] Thus, the Board concluded, “the facts of [respondent’s] case clearly entail the transmission of material depicting children, under the age of sixteen, engaged in sexual behavior.” The Board recommended to the court that respondent be adjudicated a level one sex offender.
*430 This court’s correspondence unit subsequently informed respondent that the Board had recommended that he register as a level one sex offender. Respondent was advised that the court would make a final determination of the risk level at a hearing at which he had a right to be present and have counsel. At the request of respondent, the hearing was adjourned for the parties to submit written memoranda on two issues: (a) whether this court has the power to review the Board’s determination that respondent must register as a sex offender, and, if so, (b) whether the Board erred in making its determination.[3] After consideration of the parties’ submissions, this court concludes that it has the power to review the Board’s determination that respondent’s Federal conviction requires him to register as a sex offender in New York. Upon such review, the court finds that the Board erred in concluding that respondent must register, and therefore no factual hearing regarding respondent’s specific risk level is necessary.
On January 21, 1996, New York’s Sex Offender Registration Act (Correction Law art 6-C) became effective. SORA established a notification and registration scheme for individuals convicted of certain enumerated sex offenses. Under that scheme, a convicted sex offender is classified into one of three levels based upon the risk that the offender will commit a repeat offense. (Correction Law § 168-Z [6].) If the risk of repeat offense is low, the sex offender is designated as a level one offender. For these individuals, SORA requires notification to law enforcement agencies located in the offender’s jurisdiction, and annual registration by the offender for a period of 10 years. (Correction Law §§ 168-f, 168-h, 168-Z [6] [a].) Level two classification, which is given to offenders who present a moderate risk of reoffense, also requires law enforcement notification and annual registration for 10 years. In addition, SORA allows law enforcement agencies to notify any entity with “vulnerable populations” that a convicted level two sex offender resides in the community. Those entities, in turn, may further disseminate that information at their discretion. (Correction Law §§ 168-f, 168-h, 168-Z [6] [b].) The highest designation, level three, is given to sex offenders whose risk of a repeat offense is high. Level three offenders must register in person every 90 days for a minimum of 10 years, and potentially for life. In ad *431 dition to all of the notification provisions applicable to level two offenders, level three offenders are included in a directory of sex offenders which is made available to the public. (Correction Law §§ 168-f, 168-h, 168-/ [6] [c].) Finally, for all three classification levels, SORA requires that information about the offender be available to any member of the public who calls a designated “900” telephone number. (Correction Law § 168-p.)
Correction Law § 168-a establishes the criteria used to determine whether sex offenders convicted in other jurisdictions must register in New York.[4] Under that section, an individual is required to register as a sex offender in New York if either: (a) he is convicted of an offense in any other jurisdiction which includes “all of the essential elements” of certain enumerated New York felonies for which a prison sentence of more than one year or a sentence of death was authorized in the foreign jurisdiction; or (b) he is convicted of a felony in any other jurisdiction for which a prison sentence of more than one year or a sentence of death was authorized in the foreign jurisdiction, and for which the offender is required to register as a sex offender in the foreign jurisdiction. (Correction Law § 168-a [2] [b].)
The procedures used to ensure registration by sex offenders convicted in other jurisdictions are set forth in Correction Law § 168-k. That section provides:
“The [Division of Criminal Justice Services] shall advise the [Bjoard that the sex offender has established residence in this state. The [Bjoard shall determine whether the sex offender is required to register * * * No later than thirty days prior to the [B]oard making a recommendation, the sex offender shall be notified that Ms or her case is under review and that he or she is permitted to submit .to the [B]oard any information relevant to the review. After reviewing any information obtained, and applying the [risk level guidelines], the [Bjoard shall * * * make a recommendation regarding the duration of registration * * * and level of notification * * * This recommendation * * * shall be submitted by the [Bjoard to the * * * court and to the district attorney * * * It shall be the duty of the * * * court * * * applying the [risk level] guidelines * * * to determine the duration of registra *432 tion * * * and level of notification.” (Correction Law § 168-k [2] [emphasis added].)
That subdivision further requires that the court provide the offender with a copy of the Board’s recommendation, and advise him that he has a right to a hearing prior to the court’s determination, the right to be represented by counsel at the hearing and that a lawyer will be appointed if he is unable to afford one.
At the hearing, the offender must be given the opportunity to appear and be heard. Further, the offender must be provided with discovery relevant to the issues at the hearing. The People bear the burden of proving facts supporting the duration of registration and level of notification sought by clear and convincing evidence. At the conclusion of the hearing, the court must render an order setting forth its risk level determination, and the findings of fact and conclusions of law on which the determination is based. Finally, either party may appeal as of right from the court’s order pursuant to provisions of the CPLR. (Correction Law § 168-k [2].)
With this statutory backdrop in place, the first issue the court must address is whether it has the authority to review the Board’s legal conclusion that respondent must register as a sex offender. Respondent argues that the above-quoted statutory language makes clear that the Board’s role is merely to recommend to the court that an individual with a foreign conviction register as a sex offender and to further recommend an appropriate risk level. Thus, respondent contends, this court is not bound by the Board’s determination that respondent’s foreign conviction requires him to register in New York. This court agrees with respondent. There is nothing in the statutory language which unequivocally states that the Board has the exclusive authority to decide the threshold issue of whether respondent is required to register. Likewise, nothing in the statute prohibits this court from reviewing the Board’s decision on this issue.
To the contrary, the statute specifically states, in three separate places, that the Board’s determination concerning the level of notification and duration of registration is a recommendation to the court. Moreover, the statute explicitly grants to the court the ultimate power to decide the offender’s level of notification and duration of registration. This court concludes that the only reasonable interpretation of the statute -is that the power of the court to determine how long and at what level the offender has to register includes the power to determine *433 whether registration is required at all. This conclusion is further supported by that section of the statute which requires the court to “render an order setting forth its risk level determination and the findings of fact and conclusions of law on which the determination is based.” (Correction Law § 168-k [2].) Certainly, any legal conclusions concerning the level of notification and duration of registration must encompass the essential legal issue of whether the offender has to register at all.
Notably, the Attorney General, which represents the Board in this proceeding, appears to believe that the Board’s determination that respondent is required to register is subject to this court’s review. In its memorandum submitted to this court, the Attorney General does not argue that the court lacks the power to review the Board’s legal determination that respondent must register. To the contrary, the memorandum, citing Correction Law § 168-k (2), specifically acknowledges that “the Board initially determines whether or not an offender convicted in an out-of-State jurisdiction is required to register and then makes a recommendation to the court.” (Attorney General’s Mem, at 2 [emphasis added].) Thus, it appears that the Attorney General agrees with this court’s interpretation of the statute and does not contest the court’s power to review whether the Board’s decision was legally sound.
This court has found no cases from either the Court of Appeals or the Appellate Divisions which would preclude the court from reviewing the Board’s registration decision. Indeed, no appellate court has addressed the precise issue presented here. The court is aware, however, of a decision to the contrary issued by a court of concurrent jurisdiction. In Matter of Mandel (184 Misc 2d 897 [Nassau County Ct 2000]), the court held that SORA vests the authority to determine if registration is required solely with the Board, and that the court has no power to review that determination. The court in Mandel did not cite any cases in support of its position, but rather relied only on the few words in the statute concerning the Board’s role in deciding this issue. However, the Mandel opinion does not discuss any of the due process and legislative history issues covered in this court’s opinion. Thus, this court respectfully disagrees with the Mandel decision and reaches a different result.
The conclusion reached here is entirely consistent not only with the specific section of SORA governing out-of-State offenders, but also with other subdivisions of the statute which *434 give the court the authority to determine if in-State offenders are subject to SORA’s provisions. For example, as to those defendants convicted in New York of any of the enumerated offenses, SORA provides that “[u]pon conviction * * * the court shall certify that the person is a sex offender.” (Correction Law § 168-d [1].) Similarly, for defendants about to be discharged from jail or paroled, the statute states that “[a] determination that an offender is a sex offender * * * shall be made * * * by the sentencing court.” (Correction Law § 168-n [1].) These determinations for New York offenders are quite simple — the court need only compare the crime of which defendant was convicted with the list of sex offenses laid out in the statute. (Correction Law § 168-a [2], [3].) On the other hand, as discussed more fully below, the test to determine if an out-of-State conviction qualifies as a sex offense under SORA is much more complicated and involves a painstaking comparison of the New York and foreign statutes. To conclude that this court does not have the power to review the Board’s decision would mean that the Legislature provided for the courts to make the simplest of SORA determinations, yet entrusted the much more complicated legal conclusions to an administrative agency free from any judicial review of its decisions. The Legislature could not have intended this anomaly to occur.
Interpreting the statute to conclude that this court cannot review the Board’s determination that an out-of-State offender must register would be contrary to the statute’s legislative history and would present grave due process concerns. In Doe v Pataki (3 F Supp 2d 456 [SD NY 1998]), Judge Denny Chin found that SORA, as originally enacted, had failed to provide procedural due process to convicted sex offenders who were required to register. Specifically, the court held that in order to satisfy due process, the offender must be given a hearing with notice, an opportunity to retain counsel or have counsel appointed, prehearing discovery, the right to have his risk level determined by clear and convincing evidence, and the right to appeal his risk level determination. (Doe v Pataki, 3 F Supp 2d, at 471-472.)
In 1999, recognizing that SORA did not provide for uniform due process procedures, the Legislature amended the statute, effective January 1, 2000, to specifically address the concerns set forth in Judge Chin’s decision. (See Mem to James M. McGuire from Kathy A. Bennett, Sept. 1, 1999, Bill Jacket, L 1999, ch 453.) According to the Governor’s Program Bill, the primary purpose of the amendments was “to incorporate in *435 [SORA] additional due process standards.” (See Governor’s Program Bill, Bill Jacket, L 1999, ch 453.) Included in those amendments were changes to the subdivision, of SORA governing out-of-State offenders.
As amended, that subdivision now provides that the court’s risk level determination must be accompanied by all of the due process protections enumerated by Judge Chin in Doe v Pataki (supra). In contrast, on its face, that part of the subdivision giving the Board the power to determine whether an out-of-State offender is required to register contains none of those due process protections. Although not specifically mentioned in this subdivision, it is entirely consistent with the legislative history for this court to conclude that due process protections must be read to apply not only to the procedures to determine the specific risk level to be assigned, but also to the Board’s determination that an offender must register in the first place. Were this court to interpret the statute to prohibit judicial review of the Board’s decision, there would be absolutely no due process protection for an out-of-State offender with regard to the Board’s determination as to whether registration is necessary. Such an interpretation would be entirely contrary to the legislative history, could not have been what the Legislature intended, and might present constitutional concerns.
To hold that this court has no power to review the Board’s determination of the purely legal issue involved here would simply make no sense. Such a narrow interpretation of the statute would mean that if a court, at the risk level hearing, notices a clear legal error in the Board’s conclusion that an out-of-State offender must register, as is the case here, its hands would be tied and it would be forced to issue an illegal order directing the offender to register. Further, it would mean that an aggrieved offender seeking relief would be forced to pursue two distinct proceedings: an appeal pursuant to SORA of the court’s risk level determination, and a CPLR article 78 proceeding attacking the Board’s determination that registration is warranted.[5] Such a result could not have been what the Legislature intended. (See People v Kearns, 95 NY2d 816 [2000] *436 [Legislature could not have intended SORA statute to generate dual civil and criminal tracks of appeal].) Accordingly, the only logical, reasonable and just interpretation of the statute is that this court has the authority to review the Board’s threshold determination that respondent must register.
Having concluded that it is in the court’s province to review the Board’s determination, the court must now decide whether that determination was legally correct. As explained above, Correction Law § 168-a (2) (b) sets forth the criteria for determining whether a sex offender convicted in another jurisdiction must register in New York. Under that section, registration is required under two circumstances. First, if the offense is a felony for which the offender would have to register as a sex offender in the other jurisdiction, he is required to register as a sex offender in New York. The Attorney General does not argue that this provision is applicable to respondent, presumably because it recognizes that there is no registration requirement in the jurisdiction of conviction here, the Southern District.[6]
Registration in New York is also required for those sex offenders convicted in other jurisdictions of any offense which includes “all of the essential elements” of certain enumerated New York felony sex offenses. The statute does not define “essential elements” nor does it provide any further guidance on how to determine if an out-of-State conviction qualifies for New York registration. Respondent argues that that term should be strictly construed and urges this court to apply the “essential elements” test developed by the Court of Appeals for using out-of-State convictions to adjudicate defendants as prior felony offenders. The Attorney General argues that applying that test would frustrate the intent of the SORA statute.
The New York Court of Appeals has strictly construed the “essential elements” test for determining whether an out-of-State conviction qualifies as a prior felony for predicate felon adjudications. The test requires that the elements of the cut- *437 of-State crime be virtually identical to the counterpart elements of the New York felony. (People v Olah, 300 NY 96 [1949].) Moreover, in determining whether the test is satisfied, the court is limited to comparing the New York statute with the out-of State statute, and may not consider the factual allegations in the indictment or the evidence at trial. (People v Muniz, 74 NY2d 464 [1989]; People v Gonzalez, 61 NY2d 586 [1984].) If the elements do not match, the out-of-State conviction cannot be used to adjudicate the defendant a predicate felon. (People v Muniz, 74 NY2d 464.)
This court is constrained to agree with respondent and conclude that the “essential elements” test in the predicate felony context must be used to determine whether an out-of-State conviction requires registration as a sex offender in New York. The court reaches this conclusion because the language used in Correction Law § 168-a (2) (b), the section of SORA at issue here, is identical to the language of the predicate felony statutes. For example, Penal Law § 70.04 (1) (b) (i) states that in determining whether a defendant is a second violent felony offender, the court may consider the defendant’s prior conviction “in any other jurisdiction of an offense which includes all of the essential elements of [a New York violent] felony” (emphasis added). Since these words are the exact same words contained in SORA, the court concludes that the Legislature must have intended that the tests for determining the use of out-of-State convictions be the same.[7]
The legislative history of the recent amendments to SORA lends further support to this court’s conclusion. As originally enacted, offenders with out-of-State convictions were required to register only if their convictions satisfied the “essential elements” test. In 1999, SORA was amended to also mandate registration where the offender was required to register as a sex offender in the jurisdiction of conviction. The Governor’s Program Bill explains that the amendment was necessary because “[t]he present language of the statute [i.e., the ‘essential elements’ test] requires a detailed analysis of the statutes in other jurisdictions to determine whether registration is required in New York State.” (See Governor’s Program Bill, Bill Jacket, L 1999, ch 453.) In light of this legislative statement, there can be no doubt that the “essential elements” *438 test in SORA is the same as the “essential elements” test in the predicate felony statutes.
Having determined that the “essential elements” test of SORA must be strictly construed, this court must now compare the Federal statute of which respondent was convicted with its New York analogue. Defendant was convicted of violating 18 USC § 2252 (a) (1). That statute prohibits the knowing transportation or shipping, in interstate or foreign commerce, of visual depictions involving a minor engaging in sexually explicit conduct. “Minor” is defined as a person under the age of 18 years. (18 USC § 2256 [1].) According to the Board, that statute is analogous to two New York statutes: promoting a sexual performance by a child (Penal Law § 263.15) and promoting an obscene sexual performance by a child (Penal Law § 263.10). Those laws prohibit the knowing production, directing or promoting of a performance or obscene performance of a child less than 17 years of age.[8] “Promote” means, inter alia, to deliver, transfer or distribute. (Penal Law § 263.00 [5].)
This court agrees with respondent that the elements of the Federal and New York statutes are not sufficiently alike to require respondent to register in New York as a sex offender. It is apparent that it is possible to violate the Federal statute with depictions of an individual less than 18 years of age without violating either of the analogous New York statutes. Since the New York and Federal statutes have different elements with regard to the age of the victim, this court concludes that the Federal statute fails the “essential elements” test contained in SORA. Accordingly, respondent cannot be required to register in New York as a sex offender.
This court is not unmindful of the Attorney General’s position that a strict application of the “essential elements” test may limit the number of convicted offenders who must register and therefore may be inconsistent with the spirit of the Sex Offender Registration Act. The recent statutory amendments to SORA make clear that the Legislature intended to expand, rather than limit, SORA’s scope with regard to out-of-State offenders. However, this court is bound by the language of the statute and by the unequivocal holdings of the Court of Appeals that define the “essential elements” test. It may be that the SORA statute has a gap with regard to some sex offenders *439 convicted in Federal court because there is no requirement of Federal registration. However, it is the Legislature, not this court, that has the power to cure what may be an oversight.

. United States v Nadel, 98 Cr 14 (JFK).

. The Board does not indicate how it concluded that the children depicted in the photographs were under the age of 12. Notably, neither the Probation Office’s presentence investigation nor any document in the Federal court file states the children’s ages. The presentence investigation does indicate that a search of respondent’s computer files uncovered images of children, most of whom were under 12 years old. However, respondent was not convicted of possessing those images.

. The Attorney General’s Office submitted a memorandum to this court on behalf of the Board. The New York County District Attorney’s Office did not submit papers, but rather agreed to allow the Attorney General’s Office to present the case for the People.

. The parties agree that the Southern District is considered another jurisdiction.

. It is not entirely clear that an article 78 proceeding would even he to challenge the Board’s determination. (See People v David W., 95 NY2d 130 [2000] [refusing to reach the issue as to whether a defendant could seek article 78 review of Probation Department’s determination that offender must register].) If, in fact, respondent here had no right to any judicial review of the Board’s determination, either through this court or by way of article 78, additional due process concerns would be presented. (See People v Hernandez, 93 NY2d 261 [1999] [defendants who are certified at conviction *436 as sex offenders entitled to appellate review for constitutional, substantive or procedural irregularities].)

. It is true that under Federal law, the F.B.I. is required to maintain a data base of sex offenders. However, registration in that data base for sex offenders convicted of Federal offenses is required only if the offender resides in a State that has not established a minimally sufficient sex offender registration program. (See 42 USC § 14072 [a], [c].) The Attorney General does not argue that New York’s program is insufficient. (See also Matter of Mandel, 184 Misc 2d 897, supra [holding that New York has a sex offender registration statute that meets Federal standards].)

. This court has not found any appellate decision on point. The only decision addressing this precise issue is Matter of Mandel (184 Misc 2d 897, supra). In Mandel, the court, in dicta, reached the same conclusion as this court.

. These statutes were amended effective February 1, 2001 to raise the age of the child from 16 to 17.