[732 NYS2d 513]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v
CHARLES H. WROTEN, Appellant.

Fourth Department, November 9, 2001

APPEARANCES OF COUNSEL

*Bridget L. Field, Public Defender's Office,* Batavia, for appellant.

*Lawrence Friedman, District Attorney* of Genesee County, Batavia (*David E. Gann* of counsel), for respondent.

**OPINION OF THE COURT**

KEHOE, J.

Defendant, a convicted sex offender, appeals from an amended order determining that he is a "level three" risk under the Sex Offender Registration Act ([SORA] Correction Law § 168 *et seq.*). As a matter of first impression at the appellate level, we must determine whether County Court, on the People's request for reconsideration of a prior order determining defendant to be a "level two risk," had statutory or inherent authority to depart from its prior order and make a new determination. We conclude that the court was authorized to reconsider or correct its determination of risk level under SORA based on further argument by the People and/or additional information provided by them.

**I**

On May 22, 1998, the 37-year-old defendant was convicted of rape in the third degree (Penal Law § 130.25 [former (2)]) for having sexual intercourse with a 15-year-old girl. He was sentenced to an indeterminate term of incarceration of 1½ to 3 years. On April 4, 2000, in anticipation of his discharge from incarceration, defendant was remanded to County Court for determination of his risk level pursuant to Correction Law §§ 168-*l* and 168-n. Under SORA, an offender's risk level determines the duration and intensity of "registration" (i.e., monitoring of the offender) and "notification" (i.e., dissemination of information about the offender) (*see,* Correction Law §§ 168-f, 168-h, 168-*l* [6]). Risk level is determined based on various factors, including "criminal history factors indicative of

high risk of repeat offense * * * [and] other criminal history factors to be considered in determining risk, including * * * the number, date and *nature* of prior offenses" (Correction Law § 168-*l* [5] [a], [b] [iii] [emphasis supplied]). Pursuant to that scheme, County Court conducted a hearing (*see*, Correction Law § 168-n [3]) at which it heard argument and considered the following materials:

(1) A *"risk assessment instrument"* containing the recommendation of the Board of Examiners of Sex Offenders (*see*, Correction Law § 168-*l* [6]; § 168-n [1]-[3]) and scoring defendant based on 15 "risk factors" (*see*, Correction Law § 168-*l* [5]) related to his 1998 conviction and criminal history. That instrument awarded defendant a score of 105, at the high end of the level two or "[m]oderate" risk classification. That score included 15 points under risk factor 9, relating to the "[n]umber and [n]ature" of defendant's "[p]rior [c]rimes," in particular, defendant's "[p]rior history/non-violent felony." The instrument indicates that defendant would have received 30 points rather than 15 if his criminal history were known to have included a "[p]rior violent felony[1] or misdemeanor sex crime or endangering welfare of a child."

(2) An attached *case summary* indicating that defendant had a prior "felony conviction[ ] for [b]urglary in South Carolina," but stating that "it is unknown if the out of state conviction would constitute a violent felony offense."

(3) A *presentence investigation (PSI) report* indicating that defendant had been convicted in South Carolina in 1989 of burglary in the first degree, a felony, but otherwise revealing nothing about the nature of that offense or its underlying facts.

During the hearing on April 4, the People argued that defendant should be classified as a level three risk because the risk assessment form had overlooked certain factors. They argued that, under risk factor 9, defendant should receive an additional 15 points (for a total of 30 rather than 15) for the number and nature of his prior crimes, to take into account his prior commission of a violent felony. Based on the record before

---

1. The risk assessment form makes clear that, insofar as risk factor 9 is concerned, the phrase "prior violent felony" stands alone and does not modify the phrase "sex crime" (*see generally, People v Victor R.,* 186 Misc 2d 28, 35-37; *People v J.G.,* 171 Misc 2d 440, 444, n 6). That is in contrast to the mandatory "Overrides" portion of the form, which asks about a "prior felony conviction for a sex crime" (*see generally, People v Harris,* 178 Misc 2d 858, 860; *People v Roe,* 177 Misc 2d 960, 964; *People v Salaam,* 174 Misc 2d 726, 730; *People v J.G., supra,* at 445).

the court and the provisions of the South Carolina statute, the People argued that defendant's South Carolina conviction was for the burglary of a dwelling, the New York equivalent of which is a violent felony. In opposition, defendant argued that the record did not indicate "whether there was any actual violence in the defendant's felony history as opposed to violent felony status attached to residential burglary in the State of New York." In rebuttal, the People reiterated that the South Carolina burglary was of a dwelling, that a residential burglary is classified as a violent felony in New York, and that the Risk Assessment Guidelines and Commentary indicate that "[t]he term violent felony, as used in the guideline, has the same meaning as in * * * Penal Law § 70.02 (1)." The People again asked that defendant be classified as a level three risk.

In its decision of April 4, the court classified defendant as a level two risk, although, in the court's words, the People had made "a good argument for why [the presumptive determination] should be modified upward." An order to that effect was signed that day and entered two days later.

On April 5, 2000, in the meantime, the People received documents from South Carolina, including a supporting affidavit and arrest warrant (one paper), an indictment, and a sentencing commitment order. Those documents show that defendant initially was charged with first degree (i.e., nighttime) burglary in violation of South Carolina Code Annotated § 16-11-311, was later indicted for burglary in the second degree in violation of South Carolina Code Annotated § 16-11-312, subsequently pleaded guilty to that indictment, was sentenced to 15 years in prison, and apparently served 30 months of that term. Those documents further show that South Carolina's offense of burglary in the second degree, like New York's, consists of unlawfully entering a dwelling with intent to commit a crime therein.[2] The supporting affidavit by the burglary victim describes the offense as follows:

> "[Defendant] did enter into the residence of [the victim] with intent to commit a crime, in that he did enter into the bedroom of a 12 yr old female and did feel her body and did make an effort to get this 12 yr old girl to have sex with him.

> "Entrance into this residence was at 4:30 AM in the night time."

---

**2.** The South Carolina crime of burglary in the first degree likewise requires entry of a dwelling, along with an aggravating factor, one of which is entering at night (*see*, SC Code Annot § 16-11-311).

On April 10, 2000, before any appeal had been taken from the April 4 order, the People apprised the court of the new information, writing:

> "Defendant should have received 30 points under factor number 9 for a prior violent felony. Furthermore * * * this should be considered to be a prior felony sex offense that would result in an automatic override. In any event, the People of the State of New York hereby request that the Court *reconsider its finding* of April 4, 2000, and make a determination that this Defendant is a level three sex offender" (emphasis supplied).

On May 4, 2000, defendant was again remanded to County Court for what the court characterized as "a *re-evaluation* of the sexual offender level based upon the papers that were received after the original level was set" (emphasis supplied). Defendant argued that, under the circumstances, and pursuant to the limitations of Correction Law § 168-o (3), the People lacked authority to seek, and the court lacked the power to grant, a "*modification*" of the court's "final" determination (emphasis supplied). The People argued that Correction Law § 168-o (3) does not apply to this case and thus does not limit the authority of either the People or the court. The People stated, "Our position is simply that the Court did not have sufficient information to make the determination when it was made and * * * there is no prejudice to the defendant" if the court were to reconsider its determination. Noting that both parties might appeal any order, the court concluded, "I have the authority to make the *modification* at this time" (emphasis supplied). The court adjourned the matter to enable defendant to conduct further discovery pursuant to Correction Law § 168-n (3).

Proceedings resumed on May 17, 2000. Defendant argued that the documents furnished to the court constituted "insufficient proof" to support "a mandatory override based on a prior sexual felony conviction." In response, the People argued that defendant had committed a residential burglary, which as a matter of law constitutes a violent felony offense. Accepting the People's argument, the court "*reconfigured*" the risk assessment document to assess "30 points under question No. 9, under criminal history" (emphasis supplied). After considering whether defendant should be categorized as a level three risk or whether there should be a downward departure, the court concluded:

"I don't intend to depart from the presumptive level which I *now find* to be a level 3 sex offender *based upon all of the information we considered before together with the 1989 affidavit of [the burglary victim]* in support of an application for a warrant detailing certain sexual conduct during the burglary by this defendant" (emphasis supplied).

The court regarded that as *"[a]dditional evidence* that defendant's prior felony conviction was violent, involving burglary of a dwelling and sexual misconduct" (emphasis supplied). In accordance with its new finding, the court tabulated defendant's score at 120 and found him to be a level three risk. An "Amended Order" was entered accordingly.

## II

Defendant contends that the court had no authority to "modify" its prior risk level assessment and that, in any event, the People did not establish the facts underlying defendant's out-of-state conviction by clear and convincing evidence.

## III

Our initial task is to determine the nature of the People's application and the court's "Amended Order." Relying on Correction Law § 168-o (3), defendant contends that the application and amended order were impermissible efforts to "modify" a "final" determination of defendant's risk level under SORA. We reject defendant's contention. Correction Law § 168-o, entitled "Petition for relief or modification," provides that "[t]he district attorney may file a petition to modify" a risk level determination under specified and limited circumstances not pertinent herein (Correction Law § 168-o [3]). Those include, in the case of a sex offender obligated to register in New York based on his conviction of a sex offense in another jurisdiction, that the offender, since registration, has been convicted of a new crime or has been found to have violated a condition of parole, probation, release, or postrelease supervision, provided that the "conduct underlying the new crime or the violation is of a nature that indicates an increased risk of a repeat sex offense" (Correction Law § 168-o [3]). Defendant contends that Correction Law § 168-o constitutes the exclusive authority for seeking or granting modification of a risk level determination. We conclude, however, that the statute has no application to the facts presented herein and therefore cannot be deemed to restrict the authority of the court, under the circumstances

presented, to reopen the matter and amend its own order to correct an error of law or fact. Defendant was not convicted of a sex offense in another jurisdiction, and this case involves no new criminal conviction or parole violation. More fundamentally, the People here explicitly framed their request as seeking something other than modification pursuant to Correction Law § 168-o. They explicitly requested "that the Court *reconsider* its finding of April 4, 2000, and make a determination that this Defendant is a level three sex offender" (emphasis supplied). They sought such relief based on further legal argument and additional and more accurate or complete information. The People thus sought relief in the nature of reargument and renewal of their prior application to have defendant classified as a level three risk, not modification of the risk assessment pursuant to Correction Law § 168-o (3).

■ The issue, therefore, is whether the court had statutory or inherent authority to revisit its prior determination based on an asserted error of law or fact. We conclude that it did.

The court had statutory authority to grant reargument and renewal pursuant to CPLR 2221. Proceedings to review SORA risk level determinations made under these circumstances have been treated as civil, not criminal, in nature (*see, People v Kearns,* 95 NY2d 816, 818; *People v Hernandez,* 93 NY2d 261, 270; *People v Stevens,* 91 NY2d 270, 276-279; *People v Cash,* 242 AD2d 976, 977; *People v Sumpter,* 177 Misc 2d 492, 497; *People v Salaam,* 174 Misc 2d, at 730, *supra*; *see generally, Matter of Vandover v Czajka,* 276 AD2d 945; *Matter of New York State Bd. of Examiners of Sex Offenders v Ransom,* 249 AD2d 891). Indeed, the Legislature recently explicitly incorporated CPLR articles 55, 56, and 57 into proceedings conducted pursuant to SORA, thereby granting either party a right to take a civil appeal from a risk level determination (*see,* Correction Law § 168-d [3]; § 168-k [2]; § 168-n [3]; § 168-o [1]-[3]; *see also, People v David W.,* 95 NY2d 130, 139, n 3; *People v Kearns, supra,* at 818-819). Those CPLR articles refer to the granting or denial of motions for reargument or renewal, the appealability or nonappealability of such orders as of right, the reviewability of such orders on appeal from other orders, and the effect of such motions and orders upon related appeals (*see,* CPLR 5517 [a] [1], [3]; [b]; 5701 [a] [2] [viii]). In our view, the Legislature's references to CPLR articles 55, 56, and 57 constitute a wholesale incorporation of those articles, including their references to motions to reargue or renew, into the procedural scheme for making and reviewing risk level determinations

pursuant to SORA. SORA thus contemplates that either party may seek reargument or renewal with respect to a risk level determination, whether in anticipation of an appeal, in conjunction therewith, or as an alternative thereto.

Even if SORA could not be read as incorporating procedures for seeking renewal or reargument with respect to a risk level determination, we nevertheless would conclude that a court may grant relief pursuant to CPLR 2221 in a SORA proceeding, which has been deemed by the courts and the Legislature to be essentially civil in form. Moreover, we would conclude that the court has inherent power to correct its own order to rectify a mistake of law or fact (*see, Allwell v Allwell,* 277 AD2d 789, 791; *Vierya v Briggs & Stratton Corp.,* 184 AD2d 766, 767; *Halloran v Halloran,* 161 AD2d 562, 564; *Matter of McClusky v New York State Dept. of Envtl. Conservation,* 159 AD2d 1005, 1006, *lv denied* 76 NY2d 707; *Block v Block,* 153 AD2d 601, 603; *Vinciguerra v Jameson,* 153 AD2d 452, 454; *Sciascia v Nevins,* 130 AD2d 649, 650; *cf., Matter of Van Leer-Greenberg v Massaro,* 87 NY2d 996, 998; *People v Minaya,* 54 NY2d 360, 364-366, *cert denied* 455 US 1024; *People v Bartley,* 47 NY2d 965, 966).

The one trial court to confront the specific issue before us held that it had inherent power to correct an erroneous risk level determination under SORA (*see, People v Harris, supra,* at 861-863). In *Harris* (*supra*), the court had relied on a stipulation that the People had entered into in ignorance of the facts concerning defendant's prior criminal record. As in this case, the *Harris* court vacated its own order classifying defendant as a level two risk, and issued an amended order finding defendant to be a level three risk. As in this case, the court granted its amended order after belatedly receiving information that defendant had previously been convicted of a sex crime (*see, People v Harris, supra,* at 861-863; *see also, People v Griffin,* 171 Misc 2d 145, 149-150 [during the pendency of an appeal, the court exercised its inherent authority to correct its failure at the time of sentencing to certify defendant as a sex offender] ).

In considering the inherent power of the court to correct its own mistakes of law or fact, we must consider the overriding purposes and objectives of SORA. In enacting SORA, the Legislature focused on "the danger of recidivism posed by sex offenders, especially those sexually violent offenders who com-

mit predatory acts characterized by repetitive and compulsive behavior" (L 1995, ch 192, § 1). The Legislature expressly intended to conform New York law to Federal requirements, "provide law enforcement with additional information critical to preventing sexual victimization and to resolving incidents involving sexual abuse and exploitation promptly," and "protect[ ] vulnerable populations and in some instances the public, from potential harm" (L 1995, ch 192, § 1; *see, People v David W., supra,* at 139; *People v Stevens, supra,* at 274-275; *Doe v Pataki,* 120 F3d 1263, 1276, *cert denied* 522 US 1122). Further, the Legislature's apparent purpose in granting either party the right to appeal is to facilitate correction of any legally or factually erroneous risk level determination. Clearly, the Legislature's interest lies in seeing that a risk level assessment is made—and made correctly—with respect to any sex offender (*see, People v Harris, supra,* at 862-863). Given their mutual right to appeal, neither party has a vested interest in the perpetuation of a factually or legally erroneous risk level determination. Further, there is no apparent legislative interest or purpose in seeing such errors corrected only later, on appeal, rather than sooner, on a motion to nisi prius (*see, People v Harris, supra,* at 862 [held: "Given the [facts of the case], and the policy mandates of the statute, the court is mindful of the need to ameliorate the situation as it now stands"]; *see also, People v David W., supra,* at 138 [noting Legislature's interest in seeing that risk assessments are made "expeditiously" with regard to offenders already released or about to be released into the community]; *People v Kearns,* 253 AD2d 768, 770 [Friedmann, J., concurring], *affd* 95 NY2d 816, *supra; People v Clark,* 261 AD2d 97, 100, *lv denied* 95 NY2d 833). Moreover, given the People's right to appeal a risk level determination, we can discern no prejudice to defendant as a result of the court's more expeditious correction of its own error.

In this case, the People adequately stated a basis for reargument and renewal of their request to classify defendant as a level three risk. Concerning reargument, we note that the original determination was, even as measured by the information initially before the court, legally and factually erroneous. Thus, the People's application was properly "based upon matters of fact or law allegedly overlooked or misapprehended by the court in determining the prior motion," including matters of fact "offered on the prior motion" (CPLR 2221 [d] [2]). During the initial proceedings, the court was made aware that

defendant's criminal history included at least one "violent felony," meaning that defendant should have received 30 rather than 15 points under factor 9, "[n]umber and [n]ature of [p]rior [c]rimes." The People specifically advised the court that the out-of-state conviction was for residential burglary, and that the relevant inquiry, under the risk assessment guidelines, is whether the out-of-state conviction is equivalent to a New York violent felony under Penal Law § 70.02 (*cf.,* Correction Law § 168-a [2] [b]; *Matter of Nadel,* 188 Misc 2d 427, 436-438; *Matter of Mandel,* 184 Misc 2d 897, 900 [applying equivalent "essential elements" test for purposes of determining whether an out-of-state conviction of a sex offense requires registration under SORA]). All other elements being equal, an out-of-state burglary of a dwelling is equivalent to a New York violent felony by virtue of Penal Law § 70.02 (1) (b), which classifies residential burglary (burglary in the second degree [Penal Law § 140.25 (2)]) as a violent felony offense. During the initial proceedings, defendant never contested the People's factual assertions or legal analysis. In any event, a prior conviction is conclusive evidence of its essential underlying facts (*see,* Correction Law § 168-n [3]). The court therefore should have credited the People's assertions and assessed defendant with at least 120 points rather than just 105. In failing to do so, the court misapprehended or overlooked the determinative facts and controlling principles of law.

Alternatively, the People stated grounds for renewal. The information obtained by them and forwarded to the court after the initial determination conclusively showed that defendant had been convicted in South Carolina of the burglary of a dwelling. Moreover, it tended to show that defendant entered the bedroom of a girl, felt her body, and tried to "get this 12 yr old girl to have sex with him." It therefore showed that defendant's prior out-of-state conviction was a violent felony offense with sexual overtones. The information in question thus consisted of "new facts not offered on the prior motion that would change the prior determination" and that the People had "reasonable justification for [failing] to present * * * on the prior motion" (CPLR 2221 [e] [2], [3]).

In sum, we conclude that the People had valid grounds for seeking reargument and renewal pursuant to CPLR 2221, and that they in any event properly invoked the inherent authority of the court to correct its own error.

## IV

■ Defendant additionally contends that the court erred in reconfiguring the risk assessment instrument by adding 15 points for his prior violent felony under factor 9, thus tabulating defendant's risk assessment score at 120, and accordingly classifying defendant as a level three risk. As defendant points out, the People bore "the burden of proving the facts supporting the duration of registration and level of notification sought by clear and convincing evidence" (Correction Law § 168-n [3]; *see, People v Bottisti*, 285 AD2d 841; *Vandover v Czajka*, 276 AD2d, at 947, *supra*).

> "In making the determination the court shall review *any victim's statement* and any *relevant materials and evidence* submitted by the sex offender and the district attorney and the recommendation and any materials submitted by the board, and may consider *reliable hearsay evidence* submitted by either party, provided that it is relevant to the determination. *Facts* previously proven at trial or *elicited at the time of entry of a plea of guilty shall be deemed established by clear and convincing evidence* and shall not be relitigated" (Correction Law § 168-n [3] [emphasis supplied]).

The materials submitted by the People at the second proceeding showed conclusively that defendant's criminal history included at least one "violent felony." Although given an opportunity to discover and present evidence on the matter (*see,* Correction Law § 168-n [3]), defendant adduced nothing in opposition to those materials. As a matter of law, the crime of which defendant was convicted, burglary in the second degree under South Carolina Code Annotated § 16-11-312, constitutes a violent felony offense (*see,* Penal Law § 70.02 [1] [b]; § 140.25 [2]). Contrary to defendant's contention, that is true irrespective of the court's finding that the prior burglary involved "sexual misconduct," i.e., irrespective of the information that defendant, during the course of the burglary, fondled and attempted to have intercourse with a 12-year-old girl. Were it necessary to reach the issue, we would conclude in any event that the signed and sworn supporting affidavit of the burglary victim constituted "reliable hearsay" and/or a "relevant" "statement" of "any victim[ ]" (Correction Law § 168-n [3]), and that the court was entitled to consider and rely on such evidence as clear and convincing proof that defendant is a level three risk (*see, People v Saleemi,* 186 Misc 2d 177, 180; *People v Victor R.,*

186 Misc 2d, at 32-35, 37, *supra*; *People v Jimenez,* 178 Misc 2d 319, 330; *People v Salaam, supra,* at 738-739).

Accordingly, the amended order should be affirmed.

GREEN, J. P., HAYES, SCUDDER and BURNS, JJ., concur.

Amended order unanimously affirmed, without costs.