OPINION OF THE COURT
Kenneth R. Fisher, J.
*470 Findings of Fact and Conclusions of Law
The above-named defendant was found guilty by a jury verdict of rape in the first degree (Penal Law § 130.35 [1]), criminal trespass in the second degree (Penal Law § 140.15), assault in the second degree (Penal Law § 120.05 [6]) and resisting arrest (Penal Law § 205.30) in County Court, Monroe County, and was sentenced on September 25, 1985, on the top rape count to an indeterminate term having a minimum of 7 years and a maximum of 21 years. Defendant was registered under the New York State Sex Offender Registration Act (SORA). Defendant was classified as a risk level three sex offender pursuant to SORA by Monroe County Court Judge Patricia Marks on February 17, 1999, following a Board of Examiners of Sex Offenders recommendation for the same.
The defendant appeared before this court for a judicial redetermination of the appropriate SORA classification pursuant to article 6-C of the Correction Law, pursuant to a consent decree issued in Doe v Pataki (3 F Supp 2d 456, 471-472 n 3 [SD NY 1998]). Evidence was received at the hearing held before the undersigned on November 15, 2004, and the court has reviewed the same. Discovery was afforded to the defendant pursuant to a scheduling order issued September 29, 2004, at least 30 days prior to the hearing or in such time that the defendant, in the presence of counsel, deemed satisfactory at the redetermination hearing. The court heard oral argument by the People and by defendant’s counsel.
The court makes the following findings of fact and conclusions of law in reaching its redetermination. The evidence presented at the hearing referenced below is found to be “relevant to the determination” and “reliable hearsay,” as those terms are used in Correction Law § 168-n (3). (Compare People v Brown, 7 AD3d 831, 832-833 [3d Dept 2004], with People v Wroten, 286 AD2d 189, 199 [4th Dept 2001].)
Risk Assessment
Findings of Fact
The court finds as follows:
Prior SORA Proceedings:
Defendant was afforded notice of his 1999 SORA hearing by notice dated January 19, 1999. On January 22, 1999, defendant replied, indicating that he wished to appear and to have counsel assigned to represent him. By order to produce, defendant was *471 produced at his SOBA hearing on February 17, 1999. The Board had previously issued a proposed risk assessment instrument and case summary, each dated December 29, 1998. The Public Defender was assigned to represent defendant at the hearing. Defense counsel states now that it “is unclear” whether discovery of the Board’s proposed risk assessment instrument and case summary was afforded. But no objection to any lack of discovery or notice was lodged at the hearing on February 17, 1999. Indeed, defendant conferred with counsel and decided not to “challenge the risk assessment that the court has received from the Board and to get this over with today.” (Transcript of proceedings, Feb. 17, 1999, at 3.) Defendant was asked if he wanted to give up any opportunity to “offer any proof or evidence,” and he replied, “yes.” (Id. at 4.) Defendant was adjudicated a level three offender on the basis of the Board’s recommendation and defendant’s affirmative representation, in the presence of counsel, that “he’s prepared to go ahead with the Risk Level III.” (Id. at 3-4.)
Redetermination Proceeding:
On this redetermination proceeding, defendant challenges his level three rating, and in particular any reliance on the Board’s case summary as reliable evidence which might meet the clear and convincing standard of proof. But defendant never denied that he inflicted serious physical injury upon the victim as described in the Board’s case summary (infliction of lacerations requiring medical treatment resulting in “scars from stitches over her lip and on her legs, in addition to memory problems she suffered as a result of head injuries he inflicted”). Defendant never denied that the victim was “treated on several occasions for bruises and cuts to her face and body,” nor did he deny that she suffered continuing memory loss problems by reason of the beating he inflicted on her. He only made a conclusory challenge that these statements in the Board’s case summary were unreliable hearsay and not clear and convincing evidence. He did not offer a different version of facts on any of these issues, by way of proffer or otherwise, nor did he point to anything in the record which would call into question any of these proffered facts.
On the question of the Georgia conviction, defendant maintains, via exhibit A, that defendant’s prior felony conviction may have been for acts which would constitute misdemeanors in New York. He does not affirmatively state that they were indeed only misdemeanors under New York state law, only that *472 he has raised a sufficient issue of fact on that question to put the People to clear and convincing proof that they were felonies under New York law. The Board’s case summary stated that defendant “was convicted in the State of Georgia of Auto Theft, Aggravated Assault and Possession of Dangerous Drugs and was incarcerated in that state for approximately two and one half years.” The New York State Identification and Intelligence System (NYSIIS) report supports this, showing that defendant’s original probation sentence for these crimes was revoked, and that he was sentenced to three years in prison. For reasons stated below, these arguments are without merit.
The Presumptive Override and its Application:
The People contend that defendant caused serious physical injury and that therefore he is a presumptive level three offender. Aside from the Board’s case summary, the People’s proffer on the serious injury issue consists almost entirely of the grand jury testimony of the victim. Her testimony (at 17-20) establishes serious physical injury, i.e., “protracted disfigurement” in the form of scars, “protracted impairment of health or . . . loss or impairment of the function of any bodily organ.” (Penal Law § 10.00 [10]; People v Irwin, 5 AD3d 1122 [4th Dept 2004] [permanent scars]; People v Gagliardo, 283 AD2d 964 [4th Dept 2001] [suturing and permanent scarring]; see also, People v Medina, 11 AD3d 331, 331 [1st Dept 2004] [permanent scars constitute “protracted disfigurement”]; People v Kenney, 291 AD2d 331 [1st Dept 2002] [single scar covered by makeup].) The photograph of the victim included as an exhibit to the November 9th discovery letter (exhibit 1 at the redetermination hearing) is inconclusive, but these descriptions of the victim’s injury, together with the People’s offer to produce the original photographs of her injuries, have gone entirely unchallenged by defendant other than in the conclusory manner described above.
Accordingly, there is a presumptive override to a level three classification by reason of inflicting serious physical injury. (People v David W, 95 NY2d 130, 135 [2000] [recognizing the SORA presumptions]; People v Brown, 302 AD2d 919, 920 [4th Dept 2003] [presumption for infliction of serious physical injury].) The statute and case law provide little guidance on how the presumptive override works in a SORA determination hearing. The Board’s guidelines state that the four overrides “automatically result in a presumptive risk assessment of level 3.” (Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, *473 at 3 [Nov. 1997].) The guidelines help somewhat, by observing that factfinders “should eschew per se rules” and assess risk “on the basis of a review of all pertinent factors.” (Id. at 2, citing Correction Law § 168-Z [5], [6].) Moreover, the presumptive override cannot defeat the defendant’s statutory right “to appear and be heard” at the SORA hearing (Correction Law § 168-n [3]), or render that right meaningless by requiring a level three classification no matter what evidence might be produced to the contrary. Accordingly, case law provides that, once a presumptive override is shown by clear and convincing proof,
“[i]t is then the duty of the sentencing court to ‘review any victim’s statement and any relevant materials and evidence submitted by the [defendant] and the district attorney and the recommendation and any materials submitted by the [B]oard’ and to make a final determination of the defendant’s risk level based on clear and convincing evidence thereof (§ 168-n [3]).” (People v Brown, 302 AD2d at 920 [emphasis supplied].)
Even with the presumptive override, therefore, a defendant may rebut the same by the provision of contrary evidence on his behalf, and the burden of proof remains with the People to prove the proposed risk level by clear and convincing evidence by reference, inter alia, to all of the statutory and guideline factors.
This is how the presumptions work under the federal preventive detention statute, the Bail Reform Act of 1984 (18 USC § 3142), which provides a useful analogy. Under that statute, when there is probable cause to believe that defendant committed a drug crime punishable by 10 years or more (or other specific enumerated crimes), “it shall be presumed that no condition or combination of conditions [of release] will reasonably assure . . . the safety of the community.” (18 USC § 3142 [e]; United States v Rodriguez, 950 F2d 85, 87 [2d Cir 1991].) Detention in such case would be justified if the government succeeds in proving dangerousness to the community by clear and convincing evidence. (Rodriguez at 88.) Under the federal formula, “a defendant must introduce some evidence contrary to the presumed fact in order to rebut the presumption,” even though “the government retains the burden of persuasion.” (Id.) In other words, “the government retains the burden of proving dangerousness by clear and convincing evidence even when the statutory presumption has been invoked.” (Id.) When the presumption is successfully rebutted in some fashion by the *474 defendant, “the presumption, rather than disappearing altogether, continues to be weighed along with other factors to be considered when deciding whether to release a defendant.” (Id. [the other factors are enumerated in section 3142 (e)].) The other presumptions in the federal Bail Reform Act, i.e., risk of flight and other predicates for the dangerousness presumption, work in the same way during federal detention hearings. (See United States v Martir, 782 F2d 1141, 1141 [2d Cir 1986]; United States v Jessup, 757 F2d 378, 380-384 [1st Cir 1985] [Breyer, J.].)[1]
Given the SORA guidelines, and statute and case law described above, it is appropriate to apply a formula much like this one to the SORA presumptive overrides. Essentially the same kinds of determinations are being made in each context— likelihood of danger to the community by reason of reoffending — and they are made upon the same type and kinds of proof (informally and by reliable factual proffers) and under the same standard of clear and convincing evidence, resulting in varying degrees of deprivation to a defendant’s liberty interests. There is evidence that the Appellate Divisions are applying some version of this formula when reviewing SORA determinations. (E.g., People v Brown, 302 AD2d at 920 [presence of presumptive override only the first step in the process, requiring the court “then” to consider the entirety of the proffered record to determine whether the People have carried their burden of proving defendant’s risk level by “clear and convincing” evidence].) Use of this formula in some fashion is particularly evident in instances when the “defendant adduce[s] nothing in opposition to th[e] materials” contained in the People’s proffer. (People v Wroten, 286 AD2d at 199; see also, People v Carswell, 8 AD3d *475 1073, 1074 [4th Dept 2004] [“defendant offered no evidence in opposition thereto”].)[2]
Defendant’s criminal history includes a youthful offender adjudication (YO) for burglary in the third degree in 1974, a resisting arrest and obstructing governmental administration conviction in 1980, a Georgia conviction for auto theft, aggravated assault and drug possession in 1982 (with a 3-year sentence imposed after revocation of a 10-year probation term), a felony cruelty to animals conviction in 1990, and this 1984 rape and associated offenses. Defendant’s effort to show that his Georgia convictions were for acts which are not felonies under New York law is improbable, given the sentences imposed and the title of the crimes involved. He does not allege that his convictions were not for felonies under Georgia law, and he fails to establish that the guidelines promulgated pursuant to Correction Law § 168-Z (5) (b) (iii) intended to import the definition of a second felony offender in Penal Law § 70.06 (1) (b) (i). (See New York State Board of Examiners of Sex Offenders, Sex Of *476 fender Registration Act: Risk Assessment Guidelines and Commentary, at 14 [Factor 9] [Nov. 1997] [referencing the Penal Law only in connection with the term “violent felony”].) I find that the People have, prima facie, established the existence of the prior felony, and the defendant’s proffer of the stack of Georgia statutes (exhibit A), is insufficient to put the court to the obligation to demand more particularized proof.
In any event, defendant’s extensive misdemeanor history deserves close scrutiny. The burglary YO adjudication resulted in some prison time with the Department of Correctional Services, because it shows him released to parole in January 1976, and discharged from parole in April 1978. (See NYSIIS report at 2.) In May 1979, he was convicted of criminal trespass in the second degree and received a 30-day jail sentence. Very shortly thereafter, he was arrested, on December 29, 1979, for assault, and was convicted upon verdict of assault in the third degree, and sentenced to probation. Prior to his sentence, defendant was twice again convicted, for assault (April 4, 1980 crime date) and for resisting arrest, obstructing governmental administration, and menacing (July 10, 1980 crime date), receiving minor jail time for each. The probation term for the 1979 assault, imposed on December 31, 1980, was revoked in August 1983, evidently by reason of his incarceration in Georgia. This rape was committed within days of his release from custody on the Georgia sentence, on August 2, 1984. (New York State Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 15 [Factor 10] [Nov. 1997] [three years measured with tolling by reason of incarceration pursuant to the prior offense: “behavior during his time at liberty ... is relevant in assessing his likelihood to reoffend”].) Accordingly, even if the Georgia crimes were not felonies under New York law and the guidelines were meant to import the definition of a second felony offender under the Penal Law, the guidelines would not adequately take this kind of criminal history into account. Accordingly, a departure is authorized and is warranted under the guidelines by reason of the failure of the guidelines to adequately account for defendant’s prior extensive criminal history and defendant’s wholly unsuccessful periods of supervised release. (People v Thomas, 307 AD2d 759 [4th Dept 2003],)[3]
*477 Defendant’s challenge to the 15-point assessment for a history of drug or alcohol abuse is a closer question. He was convicted of possession of dangerous drugs in Georgia in 1982, but his rape conviction was not shown to have been prompted by or accompanied with substance abuse. This latter circumstance does not preclude an assessment of points in this category. (New York State Board of Examiners of Sex Offenders, Sex Offender Registration Act: Risk Assessment Guidelines and Commentary, at 15 [Nov. 1997] [Factor 11] [“offender need not be abusing alcohol or drugs at the time of the instant offense to receive points in this category”].) Defendant’s contention that the court should “depart” by reason of “prolonged abstinence” (id.) is rejected because he offers no proof of abstinence except by reference to his incarceration. That fact provides no indicator of likely behavior while not incarcerated or supervised. The assessment is therefore imposed.
Defendant challenges the proposed assessment of 15 points for having not accepted responsibility for his crime. But this assessment is supported by (1) his statement to the police during the investigation in which he denied the rape, (2) the fact that he was convicted by jury verdict (not plea), and (3) his failure to offer any evidence of acceptance of responsibility posttrial, whether in prison or otherwise. Moreover, he was released on parole on March 30, 1999, and was violated on July 11, 2001, whether or not in connection with his conviction for aggravated cruelty to animals conviction (on Jan. 12, 2001) we cannot tell from the People’s proffer. But the important point is that, while not subject to the 20-point assessment in Factor 13 that the People maintain, defendant is clearly subject to a 10-point assessment in that category.
Finally, the People sought at the hearing to have the court impose a 20-point assessment in the Relationship Between Offender and Victim category (Factor 7), either on the theory that the victim was a stranger to the defendant, or that he cultivated a relationship with her for the primary purpose of victimization. Defendant objected because the Board assessed no points in this category and the People failed to give the required 10-day notice of the proposed assessment pursuant to Correction Law § 168-n *478 (3) and People v S.G. (4 Misc 3d 563, 566-567 [Sup Ct, NY County 2004]). This failure, on these facts, which include a risk level assessment very close to the 110-point threshold for level three offenders, and which involve a defendant to be released within days of the redetermination hearing and upon a clear record of felony criminal behavior twice committed within a short time of release from prison, is surprising. But the court nevertheless is disabled from considering the proposed assessment because of the lack of notice, and further because of the additional inexplicable failure of the People to request an adjournment of the hearing for the purpose of affording to the defendant the required 10-days’ notice.
Accordingly, I find that the presumptive level three classification is supported by clear and convincing evidence notwithstanding defendant’s arguments to the contrary. The presumptive classification by reason of infliction of serious physical injury (People v Brown, 302 AD2d at 920) has not been rebutted in any meaningful measure by the defendant (People v Carswell, 8 AD3d 1073 [4th Dept 2004]; People v Wroten, 286 AD2d at 199), and the People have otherwise carried their burden of proving defendant a level three offender by clear and convincing evidence.
Conclusions of Law
Evidence as to the foregoing is found to be clear and convincing. The defendant presents a total risk factor score of 100 points if the Georgia crimes are felonies, 75 points if those crimes are only scored as misdemeanors, but I find that the presumptive override should be applied for the reasons set forth above. The defendant is hereby designated a level three offender pursuant to article 6-C of the Correction Law.

. The duty to rebut the presumption once it has been invoked by the government does not shift the ultimate burden of proof; it is only a “burden of production [which] is not a heavy one to meet” (United States v Dominguez, 783 F2d 702, 707 [7th Cir 1986]), and may be satisfied “by coming forward with some evidence that [defendant] will not . . . endanger the community if released.” (Id.; see United States v Mercedes, 254 F3d 433, 436 [2d Cir 2001] [burden to rebut involves only “a limited burden of production — not a burden of persuasion”].) Because the presumptions reflect a legislative determination that a defendant charged with certain types of crimes poses special risks to the community (United States v Jessup, 757 F2d at 384), a presumption may be rebutted by some evidence that the nature of defendant’s specific crimes and prior behavior, “or . . . something about [his or her] individual circumstances, suggests that ‘what is true in general is not true in the particular case . . .’ ” (United States v Dominguez, 783 F2d at 707, quoting United States v Jessup, 757 F2d at 384).

. The federal formula parallels this approach. Each side may proceed exclusively by proffer instead of live testimony. (Cf., United States v Abuhamra, 389 F3d 309, 321 n 7 [2d Cir 2004] [postconviction hearings of this sort have the “considerable advantage” of coming after the factfinder has taken the evidence establishing defendant’s guilt at trial]; see United States v Acevedo-Ramos, 755 F2d 203, 206-208 [1st Cir 1985] [Breyer, JJ [“opposing parties simply describe to the judicial officer the nature of their evidence; they do no actually produce it,” thus permitting “rel(iance) upon investigatory descriptions of evidence (and similar hearsay) where the judicial officer reasonably concludes that those descriptions, reports, and similar evidence, in the particular circumstances of the hearing, are reliable”]; United States v Martir, 782 F2d at 1144-1145 [“Congress did not want detention hearings to resemble mini-trials”].)
As in Carswell and Wroten, the effect of failing to submit evidence in opposition to the People’s proffer, or otherwise to question the reliability thereof in a manner which might “cast doubt on the accuracy” of the investigative or other descriptions of the evidence contained therein, “tends to justify the magistrate’s decision to accept those descriptions as accurate.” (United States v Acevedo-Ramos, 755 F2d at 209; see also, United States v Martir, 782 F2d at 1147 [“failure to question the reliability of the government’s proffer hence tends to justify the acceptance of the proffer as accurate”].) Here, defendant’s routine challenge at the redetermination hearing was to documents not containing sworn statements, and to sworn statements routinely assailed, without any basis, as unreliable. This is not rebutting the presumption or affirmatively making a proffer of contrary evidence, i.e., that the defendant will not likely reoffend. In any event, for the reasons stated in text, the information before the court is reliable and clear and convincing. We do not have a situation, as in People v Brown (7 AD3d 831 [3d Dept 2004]), in which an out-of-state unsigned report concerning defendant’s out-of-state conduct, apparently not sourced, was completely unsupported by anything else in the record, and was otherwise legitimately called into question at the hearing.

. The court granted an adjournment to the People to provide more clear proof that the Georgia convictions were for acts that would be felonies under *477 New York state law. Because this defendant’s release is immediately impending, and because a determination of this issue would not change the court’s decision that the presumptive override, together with the other evidence addressed at the hearing, constitutes clear and convincing evidence supporting a level three classification, the adjournment to supplement the record is found unnecessary. Nevertheless, the parties may supplement the record by the December 10th adjourned date to make a record for appeal.