[997 NYS2d 396]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JAMES BULLOCK, Appellant.

First Department, November 25, 2014

**APPEARANCES OF COUNSEL**

*Robert S. Dean, Center for Appellate Litigation*, New York City (*Claudia S. Trupp* of counsel), for appellant.

*Cyrus R. Vance, Jr., District Attorney*, New York City (*Yuval Simchi-Levi* and *Ellen Stanfield Friedman* of counsel), for respondent.

**OPINION OF THE COURT**

ANDRIAS, J.

In 2008, defendant was convicted in North Carolina of sexual battery. Based on his relocation to New York, the Board of Examiners of Sex Offenders (Board) determined that defendant was required to register under the Sex Offender Registration Act (SORA) (Correction Law art 6-C) and recommended that he be designated a level one sex offender. Finding that the North Carolina conviction was the equivalent of sexual abuse in the first degree, a sexually violent offense under Correction Law § 168-a (3), Supreme Court found that it was compelled to adjudicate defendant a level one sexually violent offender (*see* Correction Law § 168-a [7] [b]), which subjects him to lifetime registration with the Division of Criminal Justice Services (Correction Law § 168-h [2]).

On this appeal, defendant argues that his North Carolina conviction of sexual battery is not comparable to a conviction in New York State for sexual abuse in the first degree, and that he is not required to register under SORA. He also argues that the court erred when it concluded that it lacked the discretion to deviate from the sexually violent offender designation. For the reasons that follow, we find these arguments unavailing.

■ Defendant is required to register as a sex offender in New York under SORA on the basis of his North Carolina conviction of sexual battery, which includes the essential elements of sexual abuse in the first degree (Penal Law § 130.65 [1]). The essential elements requirement may be satisfied when "the conduct underlying the foreign conviction . . . is, in fact, within the scope of the New York offense" (*Matter of North v Board of Examiners of Sex Offenders of State of N.Y.*, 8 NY3d 745, 753 [2007]). Regardless of whether the North Carolina statute could be viewed as criminalizing some conduct that might not be covered by the New York statute, clear and convincing evidence supports the conclusion that in the North Carolina case defendant forcibly subjected another person to sexual contact for the purpose of sexual gratification (*see* Penal Law § 130.00 [3]).

■ Defendant was properly adjudicated a sexually violent offender. Sexual abuse in the first degree is deemed a "sexually violent offense" under Correction Law § 168-a (3) (a), and a person who commits that crime—or the equivalent—is defined as a sexually violent offender under Correction Law § 168-a (7) (b).

Departing from established precedent of the Appellate Divisions, the dissent would adopt defendant's argument that a court has the discretion to decline to designate a defendant a sexually violent offender, even where he or she falls within the statutory definition, and would remand to Supreme Court for a de novo determination of defendant's designation, giving due consideration to the recommendation of the Board. We disagree.

When a sex offender from another state has established residence in New York, "[t]he board shall determine whether the sex offender is required to register with the division [of criminal justice services]" (Correction Law § 168-k [2]). Pursuant to the 2002 amendments to SORA, Correction Law §§ 168-k and 168-*l* were amended to require the Board to recommend and a court to determine whether the offender is a sexual predator, sexually violent offender, or predicate sex offender. The court must also determine the level of community notification that will be assigned (*see* L 2002, ch 11, §§ 15, 17).

The amended section 168-k (2) provided:

> "After reviewing any information obtained, and applying the guidelines established in subdivision five of section one hundred sixty-eight-l of this article, the board shall within sixty calendar days make a recommendation regarding the level of notification pursuant to subdivision six of section one hundred sixty-eight-l of this article and whether such sex offender shall be designated a sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article. . . . It shall be the duty of the county court or supreme court in the county of residence of the sex offender, applying the guidelines established in subdivision five of section one hundred sixty-eight-l of this article, to determine the level of notification pursuant to subdivision six of section one hundred sixty-eight-l of this article and whether such sex offender shall be designated a sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article" (former Correction Law

§ 168-k [2]).*

The amended section 168-*l* (6) provided:

> "Applying these guidelines, the board shall within sixty calendar days prior to the discharge, parole, release to post-release supervision or release of a sex offender make a recommendation which shall be confidential and shall not be available for public inspection, to the sentencing court as to whether such sex offender warrants the designation of sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article. In addition, the guidelines shall be applied by the board to make a recommendation to the sentencing court which shall be confidential and shall not be available for public inspection, providing for one of the following three levels of notification depending upon the degree of the risk of re-offense by the sex offender" (former Correction Law § 168-*l* [6]).

"While [the] Court is directed to apply SORA's Risk Assessment Guidelines in making both determinations . . . , the statutory definition of sexually violent offender, namely, a sex offender convicted of one of several enumerated sexually violent offenses, does not allow for a discretionary determination" (*People v Lockwood*, 308 AD2d 640, 640 [3d Dept 2003]). Thus, although the "level suggested by the RAI [risk assessment instrument] is merely presumptive and a SORA court possesses the discretion to impose a lower or higher risk level if it concludes that the factors in the RAI do not result in an appropriate designation" (*People v Mingo*, 12 NY3d 563, 568 n 2 [2009]; *see also People v Pettigrew*, 14 NY3d 406, 409 [2010]), the Court of Appeals has observed that

> "since 2002, SORA has compelled a defendant convicted of a 'sexually violent offense' to register at least annually for life (Correction Law § 168-h

---

\* Correction Law § 168-n (1) was similarly amended to require that "[a] determination that an offender is a sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article shall be made prior to the discharge, parole, release to post-release supervision or release of such offender by the sentencing court applying the guidelines established in subdivision five of section one hundred sixty-eight-l of this article after receiving a recommendation from the board pursuant to section one hundred sixty-eight-l of this article" (*see* L 2002, ch 11, § 20).

[2]; *see* Correction Law § 168-a [3] [a]; [7] [b]; L 2002, ch 11, § 13). The same is true of a predicate sex offender—a person who is convicted of a sex offense or sexually violent offense after having previously been convicted of such an offense (Correction Law § 168-a [7] [c]; § 168-h [2]). But for others, the registration period depends on the risk level designation that is assigned at the SORA proceeding—level one, evidencing a low risk of reoffense, level two, a moderate risk, and level three, a high risk. Individuals determined to have the lowest risk of reoffense—level one offenders—are relieved of the duty to register after 20 years while level two and three offenders must register at least once each year for life (Correction Law § 168-h)" (*People v Mingo*, 12 NY3d at 570-571 [footnotes omitted]).

Consistent with this view, in *People v Williams* (96 AD3d 421, 422 [1st Dept 2012], *lv denied* 19 NY3d 813 [2012]), this Court held that a sexually violent offender "designation was required by statute" because the defendant pleaded guilty to "an enumerated sexually violent offense" (*see also People v Bunger*, 78 AD3d 1433, 1434 [3d Dept 2010], *lv denied* 16 NY3d 710 [2011] ["inasmuch as defendant's conviction for rape in the first degree is deemed a sexually violent offense for the purposes of the Sex Offender Registration Act . . . we conclude that he was properly classified as a sexually violent offender"]; *People v Ayala*, 72 AD3d 1577, 1578 [4th Dept 2010], *lv denied* 15 NY3d 816 [2010] ["(p)ursuant to Correction Law § 168-a (3), defendant is a sexually violent offender by virtue of his 1986 conviction of sodomy in the first degree"]).

The dissent would abandon this established precedent, concluding that the prior decisions of the Appellate Divisions did not engage in an adequate analysis of SORA and that read in the context of the entire statutory scheme, such statutory definition serves as a threshold consideration as to whether a sex offender is eligible to be classified as a sexually violent offender. In support, the dissent emphasizes that section 168-*l* (6) provides that "[a]pplying these guidelines," the Board makes a recommendation "to the sentencing court as to whether such sex offender warrants the designation of sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article" and that section 168-n (1) states that after receiving the recommendation the court shall make its determination on

the issue "applying the guidelines." The dissent reasons that the use of the term "warrants" and reference to the guidelines establish that the court has the discretion to determine whether a defendant should be designated a sexually violent offender.

However, that statute only details the procedure for SORA adjudications, describing how after the Board indicates whether a defendant is a sexually violent offender, a court conducts a hearing in which it reviews the Board's recommendations and officially pronounces the defendant's designation. While the court is not bound by the recommendation of the Board, there is nothing in the language of the Correction Law that states that the court has discretion to not designate as sexual predators, sexually violent offenders or predicate sex offenders those defendants who meet the respective statutory definitions.

In essence, the dissent is trying to equate the nondiscretionary role of the court to designate sexual predators, sexually violent offenders and predicate sex offenders, who are defined by statute, with the Board's assessment of points against an offender. However, the assessment of points gives the court the authority to conclude an upward or downward departure is appropriate where circumstances warrant (*see generally People v Gillotti*, 23 NY3d 841 [2014]). In *Gillotti*, the Court of Appeals explained:

> "Under SORA, a court must follow three analytical steps to determine whether or not to order a departure from the presumptive risk level indicated by the offender's guidelines factor score. At the first step, the court must decide whether the aggravating or mitigating circumstances alleged by a party seeking a departure are, as a matter of law, of a kind or to a degree not adequately taken into account by the guidelines . . . . At the second step, the court must decide whether the party requesting the departure has adduced sufficient evidence to meet its burden of proof in establishing that the alleged aggravating or mitigating circumstances actually exist in the case at hand . . . . If the party applying for a departure surmounts the first two steps, the law permits a departure, but the court still has discretion to refuse to depart or to grant a departure. Thus, at the third step, the court must

exercise its discretion by weighing the aggravating and mitigating factors to determine whether the totality of the circumstances warrants a departure to avoid an over- or under-assessment of the defendant's dangerousness and risk of sexual recidivism" (23 NY2d at 861).

The court does not have such discretion, however, where the sex offenses are defined by statute.

This interpretation is consistent with statements in the legislative history of the 2002 amendments which demonstrates that the purpose of the bill was to bring SORA into full compliance with federal statutes (see Mem of Senator Dean G. Skelos, 2002 NY Legis Ann at 396; see also Budget Rep on Bills, Bill Jacket, L 1995, ch 192 at 17). The Budget Report explained:

> "In order to remain eligible for full Federal Byrne Formula Grant funding, New York must demonstrate compliance with the Jacob Wetterling Crimes against Children and Sexually Violent Offender Registration Program (Wetterling Act), the Pam Lychner Sexual Offender Tracking and Identification Act of 1996 (Lychner Act), section 115 of the General Provisions of Title I of the Departments of Commerce, Justice and State, the Judiciary, and Related Agencies Appropriations Act (CJSA) and the Campus Sex Crimes Prevention Act. The provisions of the bill will satisfy the necessary requirements including:
>
> "• The Lychner Act mandates lifetime registration for recidivists and aggravated offenders. This bill amends New York's registration requirements to ensure lifetime registration for these offenders.
>
> "• CJSA . . . . also requires a state to prescribe a heightened registration requirement for sexually violent predators. This bill meets this criteria by defining sexual predators and requiring these offenders to register for life and personally verify their residence address every 90 days" (Budget Rep on Bills, Bill Jacket, L 2002, ch 192 at 5).

The Governor's Program Bill Memorandum No. 102 explains:

> "The Lychner Act mandates lifetime registration for recidivists and aggravated offenders: A state

may not demonstrate compliance with the Lychner Act if it allows such an offender to be relieved of the lifetime registration requirement. Currently, the Sex Offender Registration Act only provides for lifetime registration for those offenders designated a level 3 risk. The risk level is assigned by the sentencing court and the court is not obligated to designate an offender a level 3 in cases where the offender has committed an aggravated offense or is a repeat offender" (L 2002, ch 11, Governor's Program Bill Mem No. 102, 2002 NY Legis Ann at 7).

Nor is the result that a level one offender will be subjected to lifetime registration anomalous. The statute plainly requires risk-level-one offenders to be designated sexually violent offenders when they commit enumerated sexually violent offenses (Correction Law § 168-a [3] [a], [b]; [7] [b]; *see People v Argueta*, 114 AD3d 651 [2d Dept 2014] [granting a downward departure from a risk level of two to a risk level of one, but noting that the defendant would remain a sexually violent offender subject to lifetime registration]). In this regard, we note that although sexually violent level one offenders must register for life, their names are not publicly available on the Internet Directory maintained by the Division, which contains information relating to level two and three offenders (*see* Correction Law § 168-q [1]). Rather, the public can obtain information about a specific level one offender by calling a toll-free telephone number maintained by the Division (*see* Correction Law § 168-p [1]).

We have considered and rejected defendant's remaining arguments, including those addressed to any alleged differences between the risk assessment instrument and the court's findings.

Accordingly, the order of the Supreme Court, New York County (Roger S. Hayes, J.), entered on or about July 6, 2012, which adjudicated defendant a level one sexually violent offender pursuant to SORA, should be affirmed, without costs.

RENWICK, J. (dissenting). In this Sex Offender Registration Act (SORA) (Correction Law art 6-C) proceeding, defendant appeals the determination by Supreme Court that he must register as a level one sexually violent offender by virtue of his North Carolina conviction of sexual battery. The principal issue that we must decide is whether Supreme Court erred in determining that it lacked authority to accept the Board of

Examiners of Sex Offenders' recommendation that defendant should not be adjudicated a sexually violent offender, an adjudication which triggers lifetime registration as a SORA sex offender (*see* Correction Law § 168-n). For the reasons discussed herein, I respectfully disagree with the majority's conclusion that Supreme Court does not have the discretion to accept or reject the recommendation of the Board of Examiners, and, thus, we should remand the proceeding to Supreme Court for a de novo determination, giving due consideration to the recommendation of the Board. Accordingly, I dissent.

Factual and Procedural Background

The genesis of this appeal stems from the October 16, 2008 guilty plea of defendant in a North Carolina state court to sexual battery.[1] The conviction arose from allegations that in the early morning on May 4, 2008, defendant approached a 17-year-old female neighbor from behind as she was about to enter her home. After telling her to be quiet, defendant, who was also 17 years old, threw her down to the ground, placed his hands over her mouth, and lifted her shirt. Defendant then proceeded to lift up her bra and place his mouth and hands on her breasts. When she started to cry, defendant told her that he was not going to rape her. Upon his arrest, defendant told the police that he just wanted to "scare" his neighbor, but did not intend to rape the neighbor.

Sometime in 2011, defendant moved to New York and was informed by the Board of Examiners that, since he had been convicted of a sexual offense in another jurisdiction and resided in New York, he was required to register as a sex offender under SORA. Having made that determination, the Board of Examiners made a recommendation to Supreme Court as to the risk level that should be assigned to defendant. The Board of Examiners prepared a case summary and risk assessment instrument (RAI) and assigned defendant a total of 40 points, correlating to a presumptive risk level one, signifying a low risk of re-offense. The Board recommended that a departure from the presumptive risk level one was not warranted. Moreover, the Board recommended that defendant should not be adjudicated a sexually violent offender, even though the North

---

1. Defendant received a sentence that included a prison term of 60 days and 18 months of probation.

Carolina conviction qualified as a sexually violent offense as defined under SORA.[2]

The People did not agree with the Board of Examiners' recommendations. First, in its submissions to Supreme Court regarding risk level, the People argued that defendant should be assessed 115 points, designating him a presumptive level three sex offender. Among other things, the People pointed out that the Board of Examiners failed to take into account that defendant committed a second sexual battery within a few weeks after committing the instant offense.[3] Second, the People recommended that defendant should be adjudicated a sexually violent offender.

In his submissions to Supreme Court, defendant argued that he should be adjudicated a level one sex offender. Defendant maintained that he only intended to "scare" his neighbor, he took responsibility for his actions, and in North Carolina, he was "deemed to present the lowest level of risk." Further, defendant argued that his subsequent sexual battery conviction "had no impact on [his] risk assessment level in North Carolina" because that conviction would only warrant 10 additional points under the factor dealing with unsatisfactory conduct while confined, since it was committed while on probation. Defendant argued that there was no basis for an upward departure, as suggested by the People. He asserted that, although his sexual offenses happened within a matter of days, those acts were "shocking" and "aberrational" given his character and overall behavior. To corroborate his contentions, defendant submitted letters from family, friends, and teachers. Defendant also noted that he had sought psychological counseling to address his actions during May 2008. Finally, defendant opposed the People's request that he should be designated a sexually violent offender, maintaining that he was not convicted of an offense that would warrant such a designation.

At the inception of the SORA determination proceeding, Supreme Court stated that it would only consider the Board's recommendation that was based primarily on defendant's October 16, 2008 conviction, and it thus disregarded the

**2.** Under SORA, a sexually violent offender is a sex offender convicted of a sexually violent offense, which includes a conviction for sexual abuse in the first degree (*see* Correction Law § 168-a [1], [3] [a]; [7] [b]; Penal Law § 130.65).

**3.** The instant offense took place on May 4, 2008, while the second offense took place on May 30, 2008.

People's proposed RAI. First, the court found that defendant's North Carolina conviction was an offense which included "all the essential elements" of sexual abuse in the first degree under New York law, since throwing the victim to the ground, lifting up her shirt with his teeth, and fondling her breasts met the definition of forcible compulsion.

Second, Supreme Court concurred with the Board's RAI that defendant was a risk level one to the extent it found that he should be assessed 30 points, rather than the 40 points recommended by the Board. The court stated that had defendant's score been higher, it would have considered a downward departure since he apologized for what he did and was seeking treatment to address his behavior. The court took into account the letters it received on behalf of defendant, as well as his involvement in a church. The court further considered that defendant's offenses all occurred within "[two] weeks of his life." Rejecting the People's categorization of defendant as sadistic, the court found that defendant was trying to make amends for his actions.

Finally, Supreme Court held that if it had discretion, it would have adhered to the Board's recommendation not to designate defendant a sexually violent offender. The court, however, found that defendant's October 16, 2008 conviction in North Carolina was the equivalent of sexual abuse in the first degree under New York law, and although the court found the result to be "anomalous," it believed that it lacked discretion to deviate from defendant's designation as a sexually violent offender.

On this appeal, defendant argues that since his North Carolina conviction of sexual battery is not comparable to a conviction in New York State for sexual abuse in the first degree, he was not required to register under SORA. Alternatively, defendant argues that at the SORA hearing, Supreme Court erred when it concluded that it lacked discretion not to designate him a sexually violent offender.

## Discussion

For the reasons the majority states, I agree that Supreme Court correctly found that defendant's North Carolina conviction demonstrated that he committed sexual abuse in the first degree under the New York Penal Law, requiring his registration as a sex offender. However, as indicated, the majority incorrectly finds that the statutory definition of sexually violent offender under SORA, namely a sex offender convicted of

one of several enumerated sexually violent offenses, does not allow for a discretionary determination (*see* Correction Law § 168-a [3] [a]; 7 [b]). In my view, the statutory definition of sexually violent offender cannot be read in isolation. Rather, when read in the context of the entire SORA statute, it becomes clear that the definition articulated is the threshold consideration to determining whether a sex offender is eligible to be classified as a sexually violent offender.

Under SORA, when an offender is convicted of an offense that requires registration as a sex offender, an assessment must be made regarding "the risk of a repeat offense . . . and the threat posed to the public safety" by the sex offender (Correction Law § 168-*l* [5]). The SORA statutory scheme assigns such task both to the Board of Examiners and the "adjudicating court."[4] As to the Board of Examiners, Correction Law § 168-*l* [5] requires that the Board shall develop guidelines and procedures to "assess the risk of a repeat offense by such sex offender and the threat posed to the public safety." Further, the statute specifically mandates that "[s]uch guidelines shall be based upon, but not limited to," certain enumerated facts that are either "indicative of high risk of repeat offense" or that "minimize risk or re-offense" (§ 168-*l* [5] [a], [c]). Accordingly, the Board opts to create an objective RAI that provides a risk level combining risk of re-offense and danger posed by a sex offender. As required by SORA, the instrument includes factors related to the offender's current offense, his criminal history, his post-offense behavior while confined for the offense, and his planned release environment (*see* Correction Law § 168-*l* [5]).[5]

Applying the aforementioned SORA guidelines, the Board is required to make two recommendations to the adjudicating court. First, the statute states that "the guidelines shall be applied by the board to make a recommendation to the [adjudicating] court . . . providing for one of the following three levels of

---

**4.** I use the phrase "adjudicating court" to refer to the forum that has jurisdiction over a SORA determination proceeding after receiving a recommendation from the Board of Examiners. This is usually the judge who presides over a sex offense case and sentences the sex offender. With regard to individuals convicted in another jurisdiction, the court where the offender resides holds a SORA determination proceeding to determine the offender's risk level and classification.

**5.** The RAI assigns numerical values to each risk. The presumptive risk level is then calculated by adding the points that the offender scores in each category. If the total score is 70 points or less, the offender is presumptively level one; if more than 70 but less than 110, he is presumptively level two; if 110 or more, he is presumptively level three.

notification depending upon the degree of the risk of re-offense by the sex offender" (Correction Law § 168-*l* [6]). If the risk of repeat offense is low, a level one designation shall be given to such sex offender. If the risk of repeat offense is moderate, a level two designation shall be given to such sex offender. If the risk of repeat offense is high and there exists a threat to the public safety, a level three designation shall be given to such sex offender.

The second recommendation—the one at issue here—is whether the sex offender must be classified as either a sexual predator, sexually violent offender or predicate sex offender. Specifically, Correction Law § 168-*l* (6) provides: "*Applying these guidelines*, the board shall . . . make a recommendation . . . to the [adjudicating] court as to whether such sex offender *warrants* the designation of sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article" (emphasis added).

As the aforementioned legislative scheme indicates, the statute is quite clear: Based on the factors outlined in the statutory guidelines, the Board of Examiners recommends to the adjudicating court whether a defendant "warrants" the designation of a sexual predator, sexually violent offender, or predicate sex offender, as defined in Correction Law § 168-a (7), as well as which of the three levels of notification the defendant should be assigned based upon "the risk of a repeat offense" and the "threat posed to the public safety" (Correction Law § 168-*l* [5]).

After receiving the Board of Examiners' recommendations as to the levels of notification and the designation of sex offender, the adjudicating court must make "a judicial determination" as to both. The adjudicating court is to use the same factors as the Board in making its determination (*see People v Stevens*, 91 NY2d 270 [1998]). Specifically, Correction Law § 168-n provides:

"§ 168-n. Judicial determination

"1. A determination that an offender is a sexual predator, sexually violent offender, or predicate sex offender as defined in subdivision seven of section one hundred sixty-eight-a of this article shall be made . . . by the sentencing court *applying the guidelines* established in subdivision five of section one hundred sixty-eight-l of this article after receiv-

ing a recommendation from the board pursuant to section one hundred sixty-eight-l of this article.

"2. In addition, *applying the guidelines* established in subdivision five of section one hundred sixty-eight-l of this article, the sentencing court shall also make a determination with respect to the level of notification, after receiving a recommendation from the board pursuant to section one hundred sixty-eight-l of this article" (emphasis added).

Despite the clear statutory language and legislative scheme giving the Board of Examiners the required task of making a recommendation to the adjudicating court as to whether the sexual offender should be classified as a sexually violent offender, the People argue—and the majority agrees—that the court has no authority under SORA to accept, or let alone consider, the Board's recommendation. What is the purpose of the recommendation, then? Indeed, there is nothing in the statutory language that either explicitly or implicitly states that the court has no discretion to accept or reject the Board of Examiners' recommendation and that the court should instead adjudicate a sex offender to be a sexually violent offender *solely* on the statutory definition of sexually violent offenses under SORA.

To the contrary, it is worth repeating that, after the Board of Examiners makes the threshold determination that an offense qualifies as a sexually violent offense as defined under SORA, the statute explicitly provides two additional steps for making a final determination to classify a sex offender as a sexually violent offender. First, the Board of Examiners makes a *recommendation*, after applying the SORA guidelines, as to whether the sex offender *"warrants"* designation as a sexually violent offender. Second, after receiving this recommendation, the court, upon "applying the guidelines," makes the judicial determination whether to classify a sex offender as a sexually violent offender. Had the legislature intended this classification to be automatically based on a qualifying conviction, it would not have given the Board of Examiners the initial task of making a recommendation to the court on whether to adjudicate an offender a sexually violent offender. In addition, it surely would not have created such redundancy and made it mandatory to consider the statutory "guidelines" in determining whether to classify a sex offender as a sexually violent offender. Accordingly, the only logical, reasonable and just interpretation of the

statute is that the adjudicating court has the discretion to consider and accept the Board of Examiners' recommendation whether to adjudicate a sex offender a sexually violent offender.

The conclusion I reach here is entirely consistent not only with the statutory text and legislative scheme, but also with the legislative purpose of SORA. Although, pursuant to SORA, the Board of Examiners developed guidelines and procedures to assess the risk of a repeat offense by a sex offender and the threat the offender poses to the public safety, the final result is fact specific and determined by the totality of each case's individual circumstances. Indeed, the SORA guidelines themselves are based upon an individualized approach that is mandated by federal law (*see* former 42 USC § 14071 [a] [2]; 42 USC § 16901 *et seq.*), and they are designed to "eschew per se rules [so] that risk should be assessed on the basis of a review of all pertinent factors (see Correction Law § 168-l[5]&[6])" (SORA: Risk Assessment Guidelines and Commentary at 2 [2006]; *see also People v Wroten*, 286 AD2d 189, 197 [4th Dept 2001], *lv denied* 97 NY2d 610 [2002]). The People, however, propose an interpretation of the statute that would deprive the Board of Examiners and the adjudicating court of such individualized and fact-specific assessment. In my view, we should reject this narrow interpretation that would not further the government interests advanced by SORA of maximizing community protection without infringing on the individual interests more than is necessary to achieve that aim.

Contrary to the majority's assertion, "the legislative history of the 2002 amendments" does not require the conclusion that the legislature intended to deprive the court of discretion as to whether or not to adjudicate a sex offender a sexually violent offender, pursuant to the Board of Examiners' recommendation. The New York rules of statutory construction provide "that if the legislative intent is clear no attempt at construction should or will be made, and that rules of construction for a statute are to be invoked only where its language leaves its purpose and intent uncertain" (McKinney's Cons Laws of NY, Book 1, Statutes § 76, Comment at 168-169). With respect to legislative history, the rules specifically provide that

> "[w]here the legislative language is clear, there is no occasion for examination into extrinsic evidence to discover legislative intent; only where legislative language is ambiguous is the consideration of extrinsic evidence warranted. In other words,

where no ambiguity or doubt appears in a statute, the court should confine its attention to the statute and not allow extrinsic circumstances to introduce a difficulty in the interpretation of plain language" (McKinney's Cons Law of NY, Book 1, Statutes § 120, Comment at 242).

Pursuant to these rules of construction, the Court of Appeals has held that "[r]esort to legislative history will be countenanced only where the language is ambiguous or where a literal construction would lead to absurd or unreasonable consequences that are contrary to the purpose of the enactment" (*Matter of Auerbach v Board of Educ. of City School Dist. of City of N.Y.*, 86 NY2d 198, 204 [1995]).

Finally, I am cognizant that our decision in *People v Williams* (96 AD3d 421, 422 [1st Dept 2012], *lv denied* 19 NY3d 813 [2012]) and subsequent cases (*see e.g. People v Faulkner*, 122 AD3d 539 [2014] [appeal No. 12914, decided simultaneously herewith] *and People v Rodriguez*, 122 AD3d 538 [2014] [appeal No. 12865-12866, decided simultaneously herewith]) come to a different conclusion,[6] and we should not deviate from it without careful consideration. Like the adjudicating court, *People v Williams* concludes that the statutory definition of sexually violent offender, i.e., a sex offender convicted of one of several enumerated sexually violent offenses, does not allow for a discretionary determination. However, in my view, our reliance, both in *Williams* and in this case, solely on the statutory definition of sexually violent offender is misplaced because it fails to consider the additional relevant statutory provisions discussed herein necessary to provide an accurate understanding of the legal framework under which sex offenders are classified as sexually violent offenders.

SWEENY, J.P., RICHTER and KAPNICK, JJ., concur with ANDRIAS, J.; RENWICK, J., dissents in a separate opinion.

Order, Supreme Court, New York County, entered on or about July 6, 2012, affirmed, without costs.

---

**6.** Other departments have reached a similar conclusion to *People v Williams* (*see e.g. People v Bunger*, 78 AD3d 1433 [3d Dept 2010], *lv denied* 16 NY3d 710 [2011]; *People v Ayala*, 72 AD3d 1577 [4th Dept 2010], *lv denied* 15 NY3d 816 [2010]; *People v Lockwood*, 308 AD2d 640 [3d Dept 2003]). However, like *Williams*, these decisions failed to address the statutory provisions addressed herein.