OPINION OF THE COURT
Dennis K. McDermott, J.
The defendant went to trial on two consolidated indictments and a jury verdict was rendered on November 19, 2012 finding him guilty of four counts of unlawful surveillance, second degree, and two counts of coercion, second degree. The facts underlying these convictions are more fully set forth in People v Piznarski (113 AD3d 166 [3d Dept 2013], lv denied 23 NY3d 1041 [2014]), but essentially the defendant had surreptitiously made video recordings of himself engaged in sexual activity on separate occasions with two different females, neither of whom was aware that she was being recorded and neither having consented to such recording.
The first victim (victim A) had been his girlfriend. The video recorded sexual activity they engaged in was consensual but when victim A later told the defendant that she had chosen to end their relationship, he informed her of the existence of the video recording and threatened to upload it to the Internet and thereby humiliate her and ruin her life unless she agreed to engage in further sexual activity with him. The defendant made a video recording of that later sexual activity as well and the victim was aware of it. The defendant was convicted of unlawful surveillance, second degree, under Penal Law § 250.45 (3) and two counts of coercion, second degree, with respect to her.
After the first victim made a complaint to the police and the *1023 defendant’s camera and laptop computer were seized pursuant to a search warrant, it was discovered that there had been a second victim (victim B) whose sexual activity with the defendant had been similarly recorded. She was identified and, when contacted by the police, she advised them that she had been unaware of the recording, that she had not consented to it, and that she wished to press charges as well. The defendant was convicted of three counts of unlawful surveillance, second degree, with respect to her under Penal Law § 250.45 (1), (2) and (3).
Only persons convicted of a “sex offense” or a “sexually violent offense” as defined in Correction Law § 168-a (2) and (3) are subject to the provisions of the Sex Offender Registration Act (Correction Law art 6-C). A second degree unlawful surveillance conviction under Penal Law § 250.45 (2), (3) or (4) is unique. Such a conviction constitutes a sex offense unless, on the defendant’s motion and after considering the nature and circumstances of the offense itself and the history and character of the defendant, the court determines that it would be unduly harsh and inappropriate to require him to register as a sex offender. (Correction Law § 168-a [2] [e].) Coercion, second degree, is not a sex offense.
At sentencing on January 14, 2013 the defendant’s motion to be relieved of the obligation to register as a sex offender was denied. Accordingly, this court must now determine his risk of reoffending. The Board of Examiners of Sex Offenders has provided the court with a case summary and a risk assessment instrument (RAI). The Board suggests in the RAI that the defendant’s risk factor score should be zero points, finding no applicable risk factors. If adopted by the court, that risk factor score would result in a presumptive level one (low risk) determination. The Board makes no recommendation for any upward departure. The defendant waived his right to appear at the risk assessment hearing. Through counsel, he urges the court to adopt the Board’s recommendation and determine him to be a level one offender.
The People bear the burden of proving the defendant’s appropriate risk level by clear and convincing evidence. (Correction Law § 168-n [3]; People v Belile, 108 AD3d 890 [3d Dept 2013], lv denied 22 NY3d 853 [2013].) The People argue that *1024 the following factors are relevant and should result in the following points being scored:
Risk factor 2 (deviate sexual intercourse with victim) 25 points
Risk factor 3 (two victims) 20 points
Risk factor 4 (continuing misconduct) 20 points
Risk factor 12 (nonacceptance of responsibility) 10 points
Risk factor score 75 points
The People’s risk factor score would lead to a presumptive finding that the defendant poses a level two (moderate) risk to reoffend.
In addition to the materials provided by the Board and the arguments of respective counsel, the court has also heard the trial testimony of both victims as well as that of the defendant and has reviewed prior to sentencing, and again now in connection with this proceeding, the presentence report.
Each of the video recordings made by the defendant showed sexual activity between two consenting adults. It is not the sexual activity itself, but each victim’s lack of consent to the recording of that activity that is the basis for the unlawful surveillance convictions. Thus, while there was sexual contact between the defendant and the victims, that contact was consensual and, therefore, is not properly scored on the RAI under factor 2.
It is undisputed that there were two victims and, accordingly, 20 points are scored under factor 3. Even the defendant concedes that these points are warranted.
The continuing misconduct which is the subject of factor 4 is misconduct directed at the same victim, not separate instances of similar misconduct directed at multiple victims. In its Commentary to the Sex Offender Guidelines, the Board states, “This category is designed to reflect the fact that some offenders . . . manifest their compulsive behavior by engaging in a continuing course of sexual contact with the same victim” (Sex Offender Registration Act: Risk Assessment Guidelines and Commentary at 10 [2006] [emphasis added]). Again, the defendant’s misconduct was not his sexual contact with his victims but rather his surreptitious recording of that contact. The defendant’s misconduct toward victim B occurred on a single night. It was not repeated. Likewise, the unconsented recording of victim A occurred on one night only. Strictly speaking, neither young lady was the victim of a continuing course of misconduct, so no points can be scored under this factor. (People v Lombardo, 167 Misc 2d 942, 944 [1996].)
*1025 The only information provided by the Board relative to the defendant’s “acceptance of responsibility” is the statement contained in the case summary that the defendant “was referred to the Sex Offender Counseling and Treatment Program (SOCTP), and completed the program on October 13, 2013.” Apart from that, the record contains no evidence that would support the conclusion that this program has resulted in a change in the defendant’s attitude. (Compare People v Munafo, 119 AD3d 1102 [3d Dept 2014].) Defense counsel advises that he has been unable to secure any documentation from the Department of Corrections and Community Supervision (DOCCS) relative to the defendant’s acceptance of responsibility but argues “it is axiomatic, and universally understood, that an inmate serving a sentence on a sex offense cannot participate—and participate successfully to completion—in the DOCCS Sex Offender Treatment program without accepting responsibility.”
At trial, the defendant testified adamantly that each victim had given him carte blanche to record his sexual activities with her at any time without prior notification. The jury clearly rejected that. The defendant, acting on the advice of his attorneys, declined to make any statement in his presentence interview by the Probation Department and he also waived his opportunity to make a statement at the time of his sentencing. By waiving his right to appear at this proceeding, the defendant has not availed himself of the opportunity to express any remorse now. In fact, the defendant has never expressed any empathy for either victim or any remorse for his conduct. There is nothing in the record that causes this court to conclude that simply by completing a program while incarcerated the defendant has had an epiphany, now realizes the error of his ways and has sincerely accepted responsibility for his actions. (People v Wright, 37 AD3d 797 [2d Dept 2007], lv denied 8 NY3d 815 [2007]; People v Fortin, 29 AD3d 765 [2d Dept 2006], lv denied 7 NY3d 712 [2006].) Concluding that the defendant has accepted responsibility could result only from speculation and, based on the record as a whole, would be unwarranted here. (People v Legall, 63 AD3d 1305 [3d Dept 2009], lv denied 13 NY3d 706 [2009]; People v Rogowski, 96 AD3d 1113 [3d Dept 2012].) For that reason, 10 points should be added to the defendant’s risk factor score under factor 12.
Although not argued by the People, the court finds that another 20 points are properly added to the defendant’s risk factor score under factor 6 due to the victims’ “physical helplessness.” Typically, this factor comes into play where the victim, *1026 owing either to mental incapacity or to physical helplessness such as being victimized while asleep or otherwise unconscious, is unable to protect herself or to report the abuse. Because of the surreptitious nature of the video recording, neither victim was then conscious of the fact that she was being abused. Hence, neither was able to protect herself or to report the offense to the police, and this is precisely what the defendant had planned on each occasion. Therefore, 20 points should be scored under this factor.
In all, the court finds clear and convincing evidence in the record warranting a risk factor score of 50 points, leading to a presumptive level one (low risk) determination.
The People argue that an upward departure is warranted for the reason that (a) the RAI did not adequately take into account the coercive nature of the defendant’s last sexual contact with victim A and (b) that there are additional unlawful surveillance victims who either could not be identified or who did not wish to come forward and press charges.
The People bear the burden of establishing the basis for an upward departure by clear and convincing evidence. The decision of whether to depart from the presumptive risk level involves three determinations: (1) whether the facts and circumstances offered as the basis for departure are not considered or not adequately considered in the RAI and/or the Guidelines; (2) whether the People have met that burden of proof; and (3) whether the court should exercise its discretion and order the departure sought. (People v Gillotti, 23 NY3d 841 [2014].)
The number of victims is already taken into account in the RAI and cannot, therefore, serve as a basis for an upward departure from the presumptive risk level. Had the record contained clear and convincing evidence that there had been more than two victims, that would have resulted in 30, rather than 20, points being scored under factor 3.
The court does find merit, however, in the People’s argument regarding the defendant’s use of the video recording to coerce victim A into engaging in further sexual activity with him. The video and still photographs of victim A found on the defendant’s computer provide chilling evidence that he was prepared to broadcast the video on the Internet and identify victim A by name. When it became clear to him that victim A wanted to end their relationship, it was only then that the defendant revealed to her what he had done and what he was planning. He sent her a Facebook message informing her of the video, *1027 describing it as a “fun little side project of mine since I could tell you were preparing to f . . . me over royally and I wanted something hilarious to hold over your head.” (See People v Piznarski at 179.) Using the fruits of his misconduct to effectively blackmail victim A so that he might further victimize her is something that the RAI does not take into consideration and it strikes the court as being a relevant factor in assessing the defendant’s risk of reoffense.
The People liken this additional factor to forcible compulsion which, if found applicable here, would have added only 10 points to the defendant’s score.* Twenty more points might be added to the defendant’s risk factor score and still he would be at a presumptive level one. Had the defendant used forcible compulsion and had that resulted in either victim sustaining a physical injury, that would have added only 15 points to the score, leaving the defendant with 65 points and still within the range of a level one determination. Therefore, the court concludes that while the defendant’s coercive use of the video recording is an additional factor for consideration here, it is not enough to elevate the defendant with a risk factor score of 50 points to a level two determination.
Finally, the record contains a letter from the defendant’s father in which he is seeking leniency for his son. The father correctly points out that the sex offender label will be a stigma and that it will significantly impede his son’s ability to secure employment and to live in reasonable comfort in society. It would take a particularly cold and cruel heart not to appreciate the father’s sincerity in expressing these concerns. However, the purpose of a risk assessment is to provide the public with fair warning of the defendant’s risk of reoffending. It is not a vehicle to further punish the defendant any more than it is an opportunity for the court to assist the defendant in his postrelease life. (People v Windham, 10 NY3d 801 [2008].) The function of the court is solely to assess risk. Mercy and leniency are not discretionary factors in that assessment. (People v Bullock, 125 AD3d 1 [1st Dept, Nov. 25, 2014]; People v Lockwood, 308 AD2d 640 [3d Dept 2003].)
Now, therefore, it is adjudged and decreed, that the defendant is a level one (low risk) sex offender.

 This factor is inapplicable since it requires proof of the use of physical force against the victim.